IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| MICHAEL LUJAN,<br><br>　　Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF CORRECTIONS, CHRIS DIGIULIO, DR. PATTON, MICHAEL F. GOWER, COLLETTE PETERS, DR. DANIEL DEWNSNUP, DR. NORTON, DR. YIN, DR. DAVIES, DR. BEAMER, TROY BOWSER, ILES, EYNON, MONTOYA, J. BUGHER, MS. B. WHELAN, J. DAFOE,<br><br>　　Defendants. | Case No. 2:17-cv-01726-JO<br><br>OPINION AND ORDER |

JONES, District Judge:

　　Plaintiff Michael A. Lujan, acting *pro se*, brought this prisoner civil rights action pursuant to 42 U.S.C. § 1983. His six claims arise from the medical care he received while incarcerated at the Two Rivers Correctional Institution (TRCI) in Umatilla, Oregon. He alleges that the Oregon Department of Corrections (ODOC) and its employees Dr. Christopher DiGiulio, Dr. Mark Patton, Michael Gower, Dr. Bennette Norton, Dr. Qiang Yin, Michelle Davies, Dr. Leland Beamer, Dr. Daniel Dewsnup, Bridgett Whelan, Joe DaFoe, and Joseph Bugher, violated his Eighth and Fourteenth Amendment rights when they acted with deliberate indifference to his medical needs. He also contends that Colette Peters, Michael Gower, Arnell Eynon, Nicole Montoya, Sherry Iles, and Troy Bowser violated his First and Fourteenth Amendment rights by

1 Opinion and Order

"erecting barriers designed to [prevent] the plaintiff from completing the requirement of grievance exhaustion." (Doc #2, p. 23). In addition, Lujan alleges four state tort claims against various named defendants, alleging physical and financial abuse, breach of contract, medical malpractice, and negligence. Lujan seeks declaratory and injunctive relief, monetary damages for economic and non-economic losses, as well as punitive damages for these claims.

Defendants filed a motion for summary judgment [#19]. For the following reasons, the defendants' motion is GRANTED as to all claims.

## Legal Standard

1. Summary Judgment

Summary judgment is proper where pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories and admissions on file,' designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-24 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United*

*Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party and inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). A *pro se* plaintiff is to be held to a less stringent standard than a plaintiff acting with assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 95 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

    2. Eighth Amendment Claim

The treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to provide prisoners with basic necessities, including medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious, *Farmer*, 511 U.S. at 834, and (2) the prison official possessed a sufficiently culpable state of mind. *Id.* The official must know of and disregard an excessive risk to an inmate's health. *Farmer*, 511 U.S. at 837.

## Discussion

    1.    Background[1]

---

[1] There are limited facts in this case. Accompanying his response to the Motion for Summary Judgment, Lujan filed a Declaration in which he provides the bulk of the evidence. Although the Declaration is not witnessed, Lujan states he ma[d]e "this Affidavit under the penalty of perjury." [#33, p. 7-9]. Because Lujan is a *pro se* litigant, I construe his declaration as an Affidavit. To understand Lujan's claims against the various defendants, I include allegations from Lujan's complaint, but do not construe the complaint as an affidavit as it was not verified by Lujan. See, *Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

The case arises out of a settlement in a prior Section 1983 case filed by Lujan, *Lujan v. Gruewald*, 2:14 cv-01640-MO (D. Or.). Under the terms of the settlement, the ODOC agreed to provide Lujan a one-time medical consultation with Dr. DiGiulio to assess Lujan's complaints of low back pain. [#33, Ex. 3, p.2]. On April 24, 2017, DiGiulio examined Lujan. DiGiulio noted a previous finding of a compression fracture and recommended further diagnostic evaluation including a new x-ray, a nerve conduction study and electromyogram (EMG), and a follow-up appointment to determine a plan of care. [#33, Ex. 3, p.2]. At the time, Lujan had an active prescription for a drug used for managing back pain and refused to take it. [#33, Ex. 3 p.2]. Approximately a month later, Lujan submitted grievance TRCI 2017-05-269 claiming DiGiulio was deliberately indifferent to Lujan's serious medical need.[2]

Lujan alleges that on May 31, 2018 he appeared at sick-call complaining of back and leg pain and that Dr. Patton ordered Capzasin cream for the pain. A week later, Lujan submitted grievance TRCI 2017-06-138 against Patton claiming Patton subjected Lujan to unnecessary infliction of pain.[3]

On June 27, Dr. Turner performed a nerve conductor test and an EMG on Lujan as recommended by DiGiulio. Subsequently, Turner examined Lujan noting "evidence of a chronic radiculopathy without signs of uncompensated denervation" and recommended a lumbar MRI and a referral for an epidural steroid injection. [#33, Ex. 1]. The next day, Lujan wrote DiGiulio and provided him with a copy of Turner's findings.

---

[2] Neither party submitted a copy of the grievance or the final disposition thereof, but defendants do not argue that Lujan failed to exhaust his administrative remedies as to this grievance. Viewing the facts in a light most favorable to plaintiff, I infer that plaintiff exhausted his remedies as to this grievance.

[3] See footnote 2.

DiGiulio did not respond. [#33, p. 7-8]. Lujan alleges that he wrote an inmate communication form to Health Services Manager Whelan requesting that she address his pain and she responded that she did not have the authority to do so.

In June, Patton gave Lujan a steroid injection. [#33, Ex. 3, p. 5]. On July 7, Patton conducted the follow-up appointment after receiving Turner's findings. Lujan complained of intense pain which Patton acknowledged and suggested Lujan use Ibuprofen and other non-steroidal, anti-inflammatory drugs (NSAID). [#33, p. 8]. On July 28, Lujan had an MRI that found a L4-5 bulging disc that abutted the L4 nerve root. [#33, Ex.2]. Between July 28 and August 16, Lujan sent communications to Gower, Peters, Bowser, DaFoe, and Bugher informing them that DiGiulio and Patton were ignoring his complaints and requesting medical attention to treat the pain in his back and leg. [#33, p.9].

Lujan alleges that on August 16, a committee including Dewsnup, DiGiulio, Beamer, Yin, Davies, Norton, and Patton met to evaluate Lujan's course of treatment and denied Lujan additional treatment. Lujan further alleges that he attempted to submit grievances against the members of the committee but that the prison grievance coordinators, Eynon and Montoya, refused to process the grievances. Eynon and Montoya allegedly told Lujan that his 2014 Tort Claim Notice prevented them from accepting further grievances regarding Lujan's back and leg pain. Lujan alleges he wrote Gower and Peters regarding Eynon and Montoya's rejections of his grievances.

At an appointment with Patton on September 14, Lujan provided Patton with a list of alternative treatments Lujan obtained through his own research. [#33, p. 9]. Patton did not affirm the efficacy of the alternative treatments but opined that they were

probably too costly for the ODOC. [#33, p.9]. Lujan alleges that at his final medical appointment with Patton before filing this complaint, Patton told Lujan that he would receive an epidural injection within a couple of months.

After Lujan filed his complaint, defendants filed an answer in which they denied all of Lujan's allegations and set forth affirmative defenses. [#14]. Thereafter, defendants filed this Motion for Summary Judgment.

2. Fugitive Disentitlement Doctrine

Defendants contend that Lujan's claims should be dismissed based on the fugitive disentitlement doctrine. Lujan currently resides in California and is on abscond status from post-prison supervision following his release from the TRCI.[4] The fugitive disentitlement doctrine precludes a fugitive plaintiff from utilizing the resources of a court for determination of his claims. *Molinaro v. New Jersey*, 396 U.S. 365 (1970). The "fugitive disentitlement doctrine" is a "severe sanction ... not lightly imposed." *Antonio–Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir.2003) (internal quotations omitted). The typical case where a court dismisses an action based on the fugitive disentitlement doctrine is where a defendant appeals a criminal conviction and then absconds during the pendency of his or her appeal from the conviction. See *Antonio-Martinez*, 317 F.3d at 1092.

The Supreme Court identifies several rationales underlying the disentitlement doctrine: First, the difficulty of enforcing a judgment if the fugitive cannot be found; second, the unfairness of allowing a party access to the courts while evading their

---

[4] Lujan submitted a change of address form to the court and provided his California address. [# 18]

jurisdiction; third, the need to discourage escape and encourage voluntary surrender; and fourth, the desire to promote the "efficient, dignified operation of the courts." *Degen v. United States,* 517 U.S. 820, 824 (1996).

Regarding the first rationale, Lujan is the plaintiff here. There is little risk that a judgment adverse to Lujan will be unenforceable. In addition, before invoking the fugitive disentitlement doctrine, courts require a nexus between the proceeding to be dismissed and the fugitive status. *Walsh v. Walsh,* 221 F.3d 204, 215 (1st Cir.2000). That nexus exists when a criminal defendant flees while the direct appeal from his conviction is pending. Defendants have not identified any nexus between Lujan's alleged violation of post-prison supervision and his claims of inadequate medical care while in prison. Also, courts generally require clear evidence that the person to be sanctioned has fled or is in hiding. *See Bhasin v. Gonzales,* 423 F.3d 977 (9th Cir. 2005). While Lujan fled the jurisdiction, he is not in hiding. Lujan submitted a change of address form and authorities know his location. Defendants' motion for summary judgment the basis of the fugitive disentitlement doctrine is denied.

3. Official Capacity

Defendants argue Lujan's claims against ODOC and individual defendants in their official capacity are barred by the Eleventh Amendment. Absent a waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. *See Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464 (1945). While defendants are correct that monetary relief would not be available to Lujan, the Eleventh Amendment does not bar claims for

declaratory and injunctive relief against individuals in their official capacity. *ACS of Fairbanks, Inc. v. GCI Commc'n Corp.*, 321 F.3d 1215, 1217 (9th Cir. 2003).

However, Lujan lacks standing to pursue a claim for injunctive relief. Standing for injunctive relief requires that a plaintiff show a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Lujan has not made such a showing. He has been released from prison, and I assume he will not reoffend and return to prison. *See O'Shea*, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). I also assume that, were he to return to prison, Defendants would continue to treat his back and leg pain. I find no real or immediate threat of repeated injury to Lujan.

Similarly, this case is not suitable for declaratory judgment. "A case or controversy exists justifying declaratory relief only when 'the challenged…activity…is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the …parties.'" *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098-99 (9th Cir. 2001). While Lujan prays in his complaint for declaratory judgment, on close inspection what he seeks is an adjudication of and remedy for <u>past</u> violations of federal law. Lujan is no longer imprisoned at TRCI. He provides no basis on which to conclude declaratory relief might affect Defendants' behavior toward him going forward.

Lujan's claims against Defendants in their official capacities fail under the Eleventh Amendment.

4. Qualified Immunity

Defendants argue that Lujan's suit is prevented by qualified immunity. The doctrine of qualified immunity protects "government officials performing discretionary functions...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 828 (1985). Qualified immunity is immunity from suit, not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether the government officials named as defendants in this case are entitled to qualified immunity, the first relevant inquiry is whether the officials violated Lujan's constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In particular, Lujan claims defendants violated his Eighth and Fourteenth Amendment rights when they acted with deliberate indifference to his medical needs and his First and Fourteenth Amendment rights by impeding his ability to file grievances.

A. Deliberate Indifference

The Ninth Circuit employs a two-part test for deliberate indifference. "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant[s'] response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012), *quoting Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

As to the first part, the Ninth Circuit identifies three situations in which a medical need is serious: (1) "[t]he existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; or (3) "the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)(en banc). Lujan's medical scans and evaluations are objective evidence implicating at least the first and third situations, since examining doctors found his ailments "worthy of comment [and] treatment." Viewing the evidence in the light most favorable to Lujan, he has raised a genuine dispute of material fact as to whether his back pain constitutes a serious medical need.

However, moving to the second part of the analysis, Lujan fails to create a genuine dispute of material fact as to whether the treating doctors or the supervisory defendants were deliberately indifferent to his serious medical need. "A prison official is deliberately indifferent under the subjective element of the test only if the official meets the standard for criminal recklessness, i.e. 'knows of and disregards an excessive risk to inmate health and safety.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014), *quoting Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "This 'requires more than ordinary lack of due care.'" *Id.*, *quoting Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Lujan filed four exhibits with his response to the motion for summary judgment. Regarding his treating physicians, DiGiulio and Patton, his exhibits show that, per the terms of the settlement, DiGiulio examined Lujan one time. DiGiulio diagnosed Lujan and recommended a nerve conductor test and an EMG be administered. Prison officials provided those additional tests. Lujan refused to take the medicine prescribed

to alleviate his back pain. He was given a steroid injection and offered NSAIDs. During the five-month course of treatment Lujan describes, he was examined no fewer than seven times by medical personnel. Neither DiGiulio nor Patton's actions were "so reckless as to be tantamount to a desire to inflict harm." To the contrary, they empathized with Lujan's continuing pain and treated him with prescription and non-prescription medications, diagnostic procedures, and injections. Lujan received "due care." I find Lujan's treating physicians, DiGiulio and Patton, were not deliberately indifferent to Lujan's back pain and did not violate Lujan's Eighth Amendment constitutional rights. Thus, they are entitled to qualified immunity.

Turning to the prison supervisors, Lujan contends that they were deliberately indifferent because they knew that DiGiulio and Patton failed to address his back pain and did nothing. The facts show that Lujan wrote to Gower, Peters, Bowser, DaFoe and Bugher and informed them that DiGiulio and Patton were ignoring Lujan's complaints and the supervisors did not respond to him or require DiGiulio or Patton to assist Lujan. However, because Lujan experienced no constitutional deprivation in his medical care on the part of his treating physicians, there is no supervisory liability.[5]

B. Inability to access grievance process

In his second claim for relief, Lujan claims that defendants Peters, Gower, Eynon, Montoya, Iles, and Bower violated his First and Fourteenth Amendment right to access the courts when they refused to accept and process his grievances. Lujan's

---

[5] Lujan's declaration identifies only Gower, Peters, Bowser, DaFoe, and Bugher as recipients of his communications to supervisors. The first claim of his complaint names Norton, Yin, Whelan, Beamer, and Dewsnup as additional defendants. No facts exist to implicate these defendants.

11 Opinion and Order

response to the motion for summary judgment and the exhibits attached thereto are silent as to this claim. The record is devoid of any facts regarding the grievance process. For that reason, I grant defendant's motion for summary judgment as to Lujan's second claim for relief.

5. State Claims

Lujan's complaint alleges four state claims: physical and financial abuse, breach of contract, medical malpractice, and negligence. The Oregon Tort Claims Act (OCTA) requires that individually named defendants be dismissed from a plaintiff's state law claim and the State of Oregon be substituted in their place. *See* Or. Rev. Stat. § 30.265(1) (the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties ...shall be an action against the public body only.").[6] Therefore, Lujan's state claims must be considered claims against the State of Oregon.

Pursuant to the Eleventh Amendment, federal courts may not entertain a lawsuit brought by a citizen against a state, its agencies, or departments without the state's consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). A state waives its sovereign immunity by expressly consenting to be sued in a particular action. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Oregon consents to be sued in Oregon state courts for torts committed by its employees, officers, or agents under the OTCA. The State has not consented to be sued in federal courts. I dismiss Lujan's state claims without prejudice so that he may pursue them in the proper forum.

---

[6] Defendants may be named individually when the damages exceed the amounts set forth in Or. Rev. Stat. § 30.271. Here, Lujan's requested damages of $250,000 falls well below the threshold amounts required by statute for the relevant time period.

12 Opinion and Order

## Conclusion

Although the fugitive disentitlement doctrine does not apply here, I grant Defendants' Motion for Summary Judgment because Lujan's claims against Defendants in their official capacities fail under the Eleventh Amendment. Furthermore, I find the government officials named as defendants in this case are entitled to qualified immunity, as I found no violation of Lujan's Constitutional rights. I dismiss without prejudice Lujan's state claims.

Dated this 2nd day of April, 2019

Robert E. Jones, Senior Judge
United States District Court